IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| LOUISE M. SCHWICKERATH, | ) | |
| | ) | |
| Debtor. | ) | Bankruptcy No. 05-04512 |
| ----------------------------- | | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | Adversary No. 06-9066 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LOUISE M. SCHWICKERATH, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER RE COMPLAINT OBJECTING TO DISCHARGE**

This matter came on for trial on October 18, 2006 on the
U.S. Trustee's Complaint Objecting to Discharge.  Plaintiff U.S.
Trustee was represented by Assistant U.S. Trustee Janet Reasoner.
Debtor Louise Schwickerath appeared in person and was represented
by Attorney Rodney Mulcahy.  After the presentation of evidence
and argument, the Court took the matter under advisement.  This
is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

**STATEMENT OF THE CASE**

U.S. Trustee requests denial of Debtor's discharge pursuant
to §§ 727(a)(2) and 727(a)(4)(A).  The complaint alleges that
Debtor failed to disclose substantial property on her bankruptcy
schedules, she intentionally undervalued certain property,
intentionally misrepresented whether or not liens existed on
certain assets, and intentionally misrepresented the nature of
certain assets.  The complaint also alleges that Debtor
liquidated a substantial annuity and purchased exempt assets
prepetition.  Debtor denies any fraudulent intent.  She asserts
that she took whatever remedial measures were necessary,
including amending her schedules, when she realized the original
schedules were deficient.

**FINDINGS OF FACT**

Debtor Louise Schwickerath lives outside the town of New
Hampton, Iowa on a 9.2 acre plot of land.  She has been employed
at Tri Mark Corporation in New Hampton as an assembler for

approximately 8 years.  Mrs. Schwickerath has a high school
education and is the mother of five children.  Her husband is
deceased.

Though Debtor's Chapter 7 petition was filed on
September 15, 2005, its genesis can be traced to events which
happened a few years earlier.  The first of these events was the
death of Debtor's husband on August 21, 2003.  Mr. Schwickerath
had a substantial life insurance policy with Farm Bureau.  When
Mr. Schwickerath died, the proceeds of the insurance policy were
placed into a Farm Bureau annuity on September 1, 2003.  This
annuity remained with Farm Bureau until it was liquidated in
August 2005.

The second event was the death of Orella Schwickerath on
October 3, 2004.  On December 27, 1995, Debtor Louise
Schwickerath and her husband, John Schwickerath, borrowed $47,800
from Orella.  To memorialize this obligation, they signed a
promissory note which is part of this record.  Subsequently, no
payments were made, either principal or interest, toward this
obligation.  When Orella died, her estate attempted to collect
this note.  Louise Schwickerath made a settlement offer of
$10,000.  The Orella Schwickerath Estate filed a lawsuit against
Debtor on May 23, 2005 alleging that principal, interest, default
interest, attorney's fees, and other costs associated with this
promissory note now totaled in excess of $107,000.

Louise Schwickerath was prepared.  She met with an attorney
to discuss the viability of a bankruptcy proceeding as early as
June 24, 2004.  She commenced a course of estate management
preparing for the possibility of filing a bankruptcy petition
under conditions most favorable to her.  She began preparing
schedules with her attorney shortly after the lawsuit in the
Orella Schwickerath Estate was filed in May 2005 and filed her
Chapter 7 petition on  September 15, 2005.

It is alleged that Mrs. Schwickerath took steps to protect
her estate in several broad categories.  First, she utilized the
annuity from her deceased husband's life insurance to maximize
her exempt assets.  Secondly, Debtor, through failure to list
assets, through incorrect labeling of liens, through
intentionally undervaluing property, and through intentionally
misdescribing property, minimized the non-exempt property which
was reported on her schedules.

The result was sufficiently successful that when her Chapter
7 petition was filed, the Chapter 7 Trustee initially categorized
this estate as a no-asset case.  During the course of the § 341

2

meeting, certain information was disclosed which caused the
Chapter 7 Trustee, Wesley Huisinga, to commence a complete
inventory of Debtor's estate.  The Court will first discuss the
facts surrounding Debtor's creation of an exempt estate and then
discuss the information contained in Debtor's schedules.

### EXEMPT ESTATE

In September, 2003, Mrs. Schwickerath purchased an annuity
with Farm Bureau from the proceeds of her deceased husband's life
insurance.  By August 2005, this annuity was worth approximately
$68,500.  In early August 2005, Debtor liquidated the annuity and
deposited the proceeds into her bank account at First Citizen's
Bank.  Thereafter, during the month of August 2005, Debtor
utilized this fund to generate exempt property.

She purchased a personal life insurance policy from Farm
Bureau Life Insurance which was claimed as exempt in her
schedules.  On August 9, 2005, she paid $9,832 to John Deere
Community Credit Union.  This payment liquidated an obligation to
the John Deere Community Credit Union which held a purchase-money
security interest on a 2005 Ford Escape.  Debtor claimed the Ford
Escape as exempt property.  She purchased a check to the Egert Law
Firm for $1,000 for bankruptcy consultation and on September 4,
2005, she wrote a check to Attorney Rodney Mulcahy for bankruptcy
representation in the amount of $1,500.  During the summer of
2005, Debtor contracted to have her home reshingled, she added a
breeze way, and had insulation work done to the home.  On
September 4, 2005, she wrote a check to Paul Kieffer, the
contractor on her home, in the amount of $13,685.  Her house was
claimed exempt in her bankruptcy schedules.

On August 8, 2005, Debtor wrote a check to Design Gallery, a
furniture store, in the amount of $1,713.83 for new furniture.
This furniture was listed as exempt on Debtor's bankruptcy
schedules.  On August 23, 2005, Debtor purchased a $30,000
cashier's check, essentially depleting her checking account.  She
utilized the cashier's check to purchase two guns on August 25,
2005 from Cabela's in Owatonna, Minnesota.  She purchased an
antique 12-gauge Franchie shotgun for $19,999 and an antique 30
caliber Franchie Sodia rifle for $8,999.  These guns were claimed
exempt by Debtor three weeks later.  Debtor's bank statement at
First Citizen's Bank reflects a balance of $931.00 on September
25, 2005.  On August 8, 2005, her checking account balance was
$69,331.

3

## DEBTOR'S BANKRUPTCY SCHEDULES

Debtor's schedules failed to list numerous items of property.  These items include a John Deere mower with a 42-inch cutting deck.  This mower was subsequently valued at $1,200.  Debtor failed to list a John Deere Gator which was subsequently estimated to be worth $2,000.  Debtor did not list a Honda generator valued at $250.  Debtor did not list woodworking equipment estimated to be worth approximately $275.  Debtor did not list the loader, bucket, and three-point mower for a 2001 New Holland tractor which items were subsequently valued at several thousand dollars.

Debtor did list the 2001 New Holland tractor with a value of $15,000.  However, she also stated that this item was subject to a security interest by Qualley Feed and Grain in the amount of $2,500.  In fact, the tractor was free and clear of any liens.  She also misdescribed it as a "lawn" tractor when, in fact, it is almost a full-sized tractor.

Debtor did not disclose, in her Statement of Financial Affairs, that she had liquidated the $68,000 annuity approximately five weeks prior to filing her petition.  She failed to disclose on her Statement of Affairs that she had made payments in excess of $600 within 90 days prior to the filing of her petition to John Deere Community Credit Union, and to Attorney Rod Mulcahy in the amount of $1,500.  She did not disclose that she had purchased the Ford Escape with a security interest which she liquidated within 90 days of the filing of her petition.

## DEBTOR'S LIABILITIES

At the time of the filing of her petition, Debtor listed an unsecured claim to the Estate of Orella Schwickerath in the amount of $110,000.  She also listed a credit card obligation to Cabela's Club VISA in the amount of $10,100.  Debtor's Schedule F states that this debt was incurred on August 1, 2005.  Therefore, this credit card balance was incurred in conjunction with the purchase of the antique guns within five or six weeks prior to the filing of the bankruptcy petition.  The only other obligation listed by Debtor is on Schedule D and H where she lists herself as a Co-Debtor for her son, Robert Schwickerath, for a loan on a tractor-trailer which he operates.  The security interest holder on this obligation is Security State Bank.  The evidence reflects that Debtor has never been required to make any payments toward this obligation.

4

## DEBTOR'S DEFENSES

Debtor testified that she did not intend to mislead her
creditors.  She testified that she had never been involved in
Court proceedings previously and was nervous.  She also testified
that she only took three to five minutes to read over the
schedules prior to signing them and now realizes that she should
have more carefully scrutinized the schedules prior to their
filing.  She testifed that, once she realized that there were
deficiencies in the schedules, she amended the schedules to
include any missing items and place an accurate value on them.
She stated that any discrepancies in the schedules were
subsequently addressed and amended.

Debtor testified that legitimate reasons existed for her to
file bankruptcy.  She stated that, based upon her financial
condition, she was barely staying afloat each month.  She
testified that a consideration in the filing of her bankruptcy
was the lawsuit filed by the Orella Schwickerath Estate.
Finally, she testified that her son's obligation on the tractor-
trailer was a consideration.  She testified that she had never
been required to make a payment on the truck.  She testified that
she had received one call from the lender.  However, she was
unable to specify when she received this call.

## CONCLUSIONS OF LAW

Section 727(a)(2) provides that a debtor's discharge should
be denied when:

> (2) the debtor, with intent to hinder, delay, or
> defraud a creditor or an officer of the estate charged
> with custody of property under this title, has
> transferred, removed, destroyed, mutilated, or
> concealed, or has permitted to be transferred, removed,
> destroyed, mutilated, or concealed--
>
>      (A) property of the debtor, within one year before
> the date of the filing of the petition; or
>
>      (B) property of the estate, after the date of the
> filing of the petition;

11 U.S.C.A. § 727(a)(2).  To succeed on a § 727(a)(2)(A) claim,
the plaintiff must prove by a preponderance of the evidence that:
(1) the act complained of was done within one year prior to the
date of petition filing; (2) the act was that of the debtor; (3)
it consisted of a transfer, removal, destruction or concealment

of the debtor's property; and (4) it was done with an intent to
hinder, delay, or defraud either a creditor or an officer of the
estate.  In re Korte, 262 B.R. 464, 472 (B.A.P. 8th Cir. 2001).
The elements for § 727(a)(2)(B) are substantially the same except
that the plaintiff must prove that the debtor transferred or
concealed property of the estate after the bankruptcy petition
was filed.  In re Stanke, 234 B.R. 449, 456 (Bankr. W.D. Mo.
1999).

    U.S. Trustee also seeks denial of discharge under
§ 727(a)(4)(A) which states that a debtor is entitled to a
discharge unless "the debtor knowingly and fraudulently, in or in
connection with the case . . . made a false oath or account."  To
prove a false oath, the plaintiff must show by a preponderance of
the evidence that (1) Debtor made a statement under oath; (2)
that statement was false; (3) Debtor knew the statement was
false; (4) Debtor made the statement with fraudulent intent; and
(5) the statement related materially to Debtor's bankruptcy case.
In re Gehl, 325 B.R. 269, 276 (Bankr. N.D. Iowa 2005).

    Statements made in schedules are signed under penalty of
perjury and have the force and effect of oaths; testimony
elicited at the first meeting of creditors is also given under
oath.  Korte, 262 B.R. at 474.  For a false oath to bar a
discharge, the false statement must be both material and made
with intent.  Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992);
Korte, 262 B.R. at 474.  Intent can be established by
circumstantial evidence, and statements made with reckless
indifference to the truth are regarded as intentionally false.
Korte, 262 B.R. at 474.  As a debtor is not likely to admit to
fraudulent intent, the debtor's course of conduct and surrounding
circumstances may also be considered.  Gehl, 325 B.R. at 277.

    As § 727(a)(4)(A) makes clear, "[t]he Code requires
    nothing less than a full and complete disclosure of any
    and all apparent interests of any kind."  Fokkena v.
    Tripp (In re Tripp), 224 B.R. 95, 98 (Bankr. N.D.Iowa
    1998) (citing In re Craig, 195 B.R. 443, 451 (Bankr.
    D.N.D. 1996)).  The debtor's "petition, including
    schedules and statements, must be accurate and
    reliable, without the necessity of digging out and
    conducting independent examinations to get the facts."
    In re Sears, 246 B.R. at 347 (citing Mertz v. Rott, 955
    F.2d 596, 598 (8th Cir. 1992)).  See generally National
    Am. Ins. Co. v. Guajardo (In re Guajardo), 215 B.R.
    739, 742 (Bankr. W.D. Ark. 1997) ("[T]he Bankruptcy
    Code requires disclosure of all interests in property,
    the location of all assets, prior and ongoing business

6

and personal transactions, and, foremost, honesty.  The
failure to comply with the requirements of disclosure
and veracity necessarily affects the creditors, the
application of the Bankruptcy Code, and the public's
respect for the bankruptcy system as well as the
judicial system as a whole.").

<u>Korte</u>, 262 B.R. at 474.

## ANALYSIS

From June, 2004 until she filed her petition in September of
2005, Debtor was in consultation with legal counsel for the
admitted purpose of considering filing a bankruptcy petition.
During that time, Debtor liquidated non-exempt assets and
transferred property and cash into exempt property.  She
liquidated a $68,000 asset into cash and used almost the entire
amount to acquire exempt assets.  Because she was unable to
invest the cash in other exempt assets, she purchased two antique
guns which were of no practical value to her other than to
generate an exemption during the bankruptcy process.  Though
Debtor professes legitimate motives for the purchase of these
guns, the Court finds the explanation lacks credibility.  In
fact, after the § 341 meeting, Debtor returned the guns to
Cabela's who accepted their return for a restocking penalty of
approximately $3,000.

To complete her prepetition planning, Debtor attempted to
minimize her non-exempt property.  She knowingly failed to list
on her bankruptcy schedules the John Deere riding mower, the John
Deere Gator, the Honda portable generator, the woodworking
equipment and power tools, and the loader bucket and three-point
mower for the New Holland tractor.  These assets have a value in
excess of $5,000.

Debtor failed to divulge or explain the extent of her
prepetition planning.  She did not disclose liquidation and
receipt of the $68,500 annuity.  She did not list or disclose
payments to the John Deere Community Credit Union for the Ford
automobile, the $13,000 payment to Mr. Kieffer for household
remodeling, the $1,500 payment to Mr. Mulcahy as attorney's fees,
or the purchase of the two antique guns.

Debtor falsely represented that Quality Feed and Grain held
a security interest in the 2001 New Holland tractor when in fact
there were no liens on this tractor.  At the § 341 meeting, she
misrepresented the manner in which she purchased her Ford
automobile.  She asserted that it was not financed and did not

7

disclose the encumbrance to John Deere Community Credit Union
which she had liquidated the previous month.  At the § 341
meeting, Debtor failed to disclose the unlisted property
previously discussed.

Debtor asserts a lack of bad intent.  She professes naivete
and nervousness concerning the process.  Her conduct, however,
undermines these claims.  Debtor's motive seems clear.  While no
explanation was provided, it is certain that Debtor made an
informed decision that she would take whatever steps were
necessary to avoid repayment of her obligation to Orella
Swickerath and later to her probate estate.  She began planning
her strategy as early as June of 2004 and, over the next 15
months, methodically manipulated her assets to create an estate
with no value to her only real creditor.  She took liquid assets
of approximately $68,000 and commenced to turn the entire amount
into exempt property.

Having turned all liquid assets into exempt property, Debtor
retained non-exempt assets which were marketable and which may
have generated cash to pay creditors.  It is the conclusion of
this Court that Debtor intentionally failed to list these assets
with the intent to place them outside the reach of the Trustee.

In all, Debtor entered into a long-term concerted effort to
create an estate which had the appearance of containing no assets
for administration.  In fact, however, without the careful
planning of Debtor, there were probably sufficient assets to pay
Debtor's creditors in full.  The only significant creditor to be
paid was the Estate of Orella Schwickerath with a claim slightly
in excess of $100,000.  With little effort, the Trustee would
have been able to locate assets of $75,000 to $80,000 and
probably more.  Instead, Debtor went to great lengths to attempt
to create a no-asset estate.  At the time of filing of her
petition, Debtor listed assets of $227,710.  Through manipulation
of assets, she was able to claim exempt property of $213,000.

Based on the entire record, the Court is overwhelmingly
satisfied that Debtor knowingly and intentionally maximized her
exempt estate to defraud creditors.  In the preparation of her
petition and schedules, she knowingly and intentionally concealed
the extent of these transactions.  For those assets which she was
unable to claim exempt, she failed to list property which could
be easily liquidated and turned into cash for the estate.  For
assets which she did list, Debtor intentionally misdescribed the
property.  The Court could go through each asset and describe
with some certainty what Debtor intended by her actions.
However, that is unnecessary.  It is sufficient to state that

8

Debtor intentionally and knowingly set out to describe the assets which she did list in her schedules as being of little or no value to the Trustee.  Initially, she was sufficiently convincing that the Chapter 7 Trustee felt that this would be a no asset case.

It is now clear that Debtor intentionally manipulated this estate to avoid leaving even a morsel on the table for the only creditor.  It is the conclusion of this Court that Debtor Louise Schwickerath concealed transactions with the intent to hinder or defraud creditors and the bankruptcy trustee.  Further, it is the conclusion of this Court that Debtor Louise Schwickerath, with fraudulent intent, knowingly made false oaths by failing to disclose these activities on her bankruptcy schedules or during her testimony at the § 341 creditor's meeting.  It is further the conclusion of this Court that the U.S. Trustee has proven the elements of §§ 727(a)(2) and 727(a)(4)(A) by a preponderance of the evidence.  Debtor Louise Schwickerath's discharge must be denied.

**WHEREFORE**, the U.S. Trustee's complaint objecting to the discharge of Louise M. Schwickerath is GRANTED.

**FURTHER**, Debtor Louise M. Schwickerath's discharge is DENIED.

**FURTHER**, judgement shall enter accordingly.

Dated and Entered:  November 1, 2006

PAUL J. KILBURG
BANKRUPTCY JUDGE

9